UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

CHRISTOPHER SCOTT REEDER,

Petitioner,

v.

NETHANJAH BREITENBACH,[1] et al.,

Respondents.

Case No. 3:23-cv-00290-ART-CSD

**MERITS ORDER**

**[ECF No. 16]**

Petitioner Christopher Scott Reeder, a Nevada prisoner who was convicted by a jury of two counts of sexual assault with a minor under the age of 14 and two counts of lewdness with a minor under the age of 14, has filed a counseled Second-Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, alleging that there was insufficient evidence to support his convictions and his counsel was ineffective. (ECF No. 16 ("Second-Amended Petition").) Respondents answered the Second-Amended Petition, and Reeder replied. (ECF Nos. 35, 38.) For the reasons discussed below, the Court denies the Petition.

I.    **BACKGROUND**

A.    **Factual background[2]**

C.L.[3] testified that she and A.R. were best friends and that she often saw Reeder, who was A.R.'s uncle, at A.R.'s house in Las Vegas, Nevada. (ECF No. 20-

---

[1] According to the Nevada Department of Corrections, Reeder is incarcerated at Lovelock Correctional Center. Nethanjah Breitenbach is the current warden for that facility. At the end of this Order, this Court kindly directs the clerk to substitute Nethanjah Breitenbach as a respondent for Respondent Timmothy Garrett. *See* Fed. R. Civ. P. 25(d).

[2] This Court makes no credibility findings or other factual findings regarding the truth or falsity of this evidence from the state court. This Court's summary is merely a backdrop to its consideration of the issues presented in the Second-Amended Petition.

[3] This Court refers to minor children by their initials.

39 at 44–46.) Following a get together at A.R.'s house, when she was six or seven years old, C.L. was spending the night at A.R.'s house when Reeder suggested that he, A.R., and C.L. watch a movie together in A.R.'s parents' bedroom. (*Id.* at 47–50.) Reeder laid in the middle of A.R. and C.L. on the bed, and at this point in the evening, there was no one else home. (*Id.* at 51.) While the movie was playing, Reeder "reached his hand over to [C.L.'s] vagina, over [her] clothes at first, and he was just doing . . . a rubbing motion." (*Id.* at 52.) Reeder then "put his hand under [her] pants and started rubbing [her] vagina" and "proceed[ed] to stick his fingers inside [her] vagina." (*Id.*) C.L. "turned over to [her] side," stopping Reeder's actions, but after C.L. rolled back over, assuming Reeder was asleep, Reeder again "put his hand inside [her] pants and proceeded to stick his fingers inside [her] vagina." (*Id.* at 53.) After this night, C.L. distanced herself from A.R. (*Id.* at 57.) Several years later, when she was twelve years old, C.L. confided in her mother about the events with Reeder. (*Id.* at 59.)

Sheila Lynch, C.L.'s mother, testified that C.L. told her about the incidents with Reeder on March 21, 2017. (ECF No. 20-39 at 105–06.) Lynch remembered the morning in the summer of 2013 that C.L. called her unusually early to pick her up from A.R.'s house. (*Id.* at 113.) That morning C.L. "looked defeated" and said she "never want[ed] to come back there," but C.L. would not tell Lynch what had happened. (*Id.* at 113, 129.) Lynch contacted the North Las Vegas Police Department the day after C.L. made her disclosure in March 2017. (*Id.* at 108.)

A.R. testified that the first time Reeder touched her was when she was 6 or 7 years old while in her bedroom sitting on the edge of her bed coloring. (ECF No. 20-39 at 135, 138, 145.) Reeder entered her room, closed the door, sat down next to A.R., and "took his hand and he rubbed [her] vagina" on the outside of her clothing for "[a]bout two to four minutes." (*Id.* at 138–39, 141.) Several years later, in December of 2016, A.R. was watching a movie on a couch next to Reeder while the rest of her family members were elsewhere in the house. (*Id.* at 144–45.)

Reeder "put the blanket over [them] and proceeded to . . . rub [her] inner thighs and use his fingertips again to go up and down, side to side, on [her] vagina" over her clothing for "[a]round three to five minutes." (*Id.* at 145, 149.) Following C.L.'s disclosure, in April 2017, authorities interviewed A.R. to determine whether she had also been abused by Reeder, but A.R. did not disclose any abuse. (*Id.* at 151.) After the interview, while still in the parking lot, A.R.'s mom informed A.R. that Reeder had abused C.L. (*Id.* at 153.) Then, later that day, A.R. confided in her mom about her experiences with Reeder. (*Id.* at 154.) A.R. testified about why she denied any abuse during her initial interview: "I was scared, upset. I didn't want to believe it. But knowing that it had happened to one of my friends, I knew it hadn't been a mistake or anything." (*Id.* at 154–55, 183 –84.)

Jody Reeder (hereinafter "Jody"), A.R.'s mother and Reeder's sister-in-law, testified that she waited to inform authorities about A.R.'s disclosure of abuse for many months because A.R. "didn't want to talk about it" right away. (ECF No. 20-40 at 14, 20.) Jody also testified about the evening A.R. and Reeder were watching a movie, explaining that A.R. "was acting very strange" because "she didn't want to sit by her uncle and . . . when it was time to go to bed, she didn't want to go to her room." (*Id.* at 24.)

Elizabeth Espinoza, a forensic interview specialist with the Department of Family Services, interviewed C.L. and A.R. at the Children Advocacy Center. (ECF No. 20-40 at 80.) Espinoza testified about C.L.'s disclosure during her forensic interview: "she said she was on a bed, Mr. Reeder was in the middle, her friend [A.R.] . . . was on the other side of the bed, and . . . she said that Mr. Reeder put his hand inside her pants, underneath her underwear, and used his fingers to touch [the inside of] her vagina." (*Id.* at 90.) C.L. then explained that after rolling from her side back to her back later that night, Reeder "did it again," explaining that "it was under her underwear with his fingers." (*Id.*) Espinoza then testified about A.R.'s disclosures during her second forensic interview, summing them up

1    as follows: "she described it as rubbing her vagina on top of her clothes two

2    different occasions." (*Id.* at 104.) Espinoza testified that A.R. told her that she did

3    not make a disclosure during her first interview because "she didn't want to

4    believe something happened to her, that she thought it was a mistake and she

5    thought maybe it was accidental," however, she "realized that something

6    happened because it happened to somebody else." (*Id.* at 105–06.)

7         Detective Becky Salkoff with the North Las Vegas Police Department

8    testified that she set up C.L.'s interview with Espinoza and then set up an

9    interview for A.R. "because [A.R. was] a possible witness" and potential victim.

10    (ECF No. 20-40 at 266, 273.) Detective Salkoff testified that there was no physical

11    examination of C.L. done because "[i]t had been five years," so there would not

12    be any injury to document or DNA evidence to collect. (*Id.* at 270.) And there was

13    no physical examination of A.R. done because "it had been 10 months since the

14    last incident, and there was [no] claim of any kind of penetration." (*Id.* at 277.)

15    Relatedly, Rachell Ekroos, the clinical direct of Nevada HealthRight, testified,

16    generally, that with a delayed disclosure, meaning "the passage of a year" or more,

17    would "affect [the] ability to see an injury" on someone who has been sexual

18    abused. (ECF No. 20-40 at 244, 254–55.)

19         Dr. Mark Chambers, a licensed clinical and forensic psychologist who

20    testified as an expert witness for the defense, testified that he reviewed the

21    discovery, court testimonies, and Espinoza interviews in preparation for his

22    testimony. (ECF No. 20-40 at 163, 173, 187.) According to Dr. Chambers, there

23    were red flags with C.L.'s and A.R.'s allegations. (*Id.* at 187.) Regarding C.L., "the

24    biggest red flag in her report, both her interview and her testimony, were the

25    specific gaps in her memory for the alleged sexual assault itself" because "the

26    sexual assault and the details of the sexual assault are generally the things that

27    are remembered the best." (*Id.* at 188.) Dr. Chambers also "thought it was curious

28    that both of the girls used" the term paralyzed to describe how they felt during

the experiences with Reeder because Dr. Chambers had "never heard a teenage girl use that term before in that context." (*Id.* at 190.) Dr. Chambers then described how both C.L.'s and A.R.'s incorrect usage of the term flashback could "be indicative of cross-contamination." (*Id.* at 192.) Turning to A.R., Dr. Chambers testified that A.R.'s "level of precision [regarding the length of time for the incidents] is a red flag." (*Id.*)

### B.    Procedural background

A jury found Reeder guilty of two counts of sexual assault with a minor under the age of 14 and two counts of lewdness with a minor under the age of 14. (ECF No. 20-50.) Reeder was sentenced to 70 years to life in prison. (*Id.*) Reeder appealed, and the Nevada Court of Appeals affirmed on May 25, 2021. (ECF No. 21-24.)

On May 26, 2022, Reeder petitioned the state court for post-conviction relief. (ECF No. 21-29.) The state court denied Reeder's petition. (ECF No. 21-49.) Reeder appealed, and the Nevada Court of Appeals affirmed on June 13, 2023. (ECF No. 22-30.) Remittitur issued on July 10, 2023. (ECF No. 22-33.)

On March 22, 2023, Reeder filed a motion to correct an illegal sentence. (ECF No. 22-52.) The state court denied the motion, Reeder appealed, and the Nevada Court of Appeals affirmed on May 1, 2024. (*Id.*)

Reeder commenced this federal habeas action on or about June 20, 2023. (ECF No. 1.) This Court granted Reeder's motion for the appointment of counsel and appointed the Federal Public Defender to represent Reeder. (ECF Nos. 3, 7.) Reeder filed his counseled First-Amended Petition on December 1, 2023, and then, following approval from this Court, filed his counseled Second-Amended Petition on March 22, 2024. (ECF Nos. 8, 13, 16.) Respondents moved to dismiss the Second-Amended Petition. (ECF No. 19.) This Court denied the motion, but it deferred ruling on whether Reeder could demonstrate cause and prejudice to overcome the procedural default of grounds 2, 3, and 4. (ECF No. 34.)

Respondents answered the Second-Amended Petition on November 4, 2024, and

Reeder replied on January 3, 2025. (ECF Nos. 35, 38.)

In his Second-Amended Petition, Reeder raises the following grounds:

1.  There was insufficient evidence presented at trial to sustain
    his convictions.
2.  His trial counsel failed to call defense witnesses at sentencing
    and failed to explain there was insufficient evidence presented
    at trial.
3.  His trial counsel failed to call defense witnesses at trial.
4.  His trial counsel failed to object to the nebulous dates alleged
    in the indictment, and failed to explain to him that the
    prosecution did not have to prove the offenses happened on a
    specific date.

(ECF No. 16.)

## II.    GOVERNING STANDARD OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable

in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act

("AEDPA"):

An application for a writ of habeas corpus on behalf of a person in
custody pursuant to the judgment of a State court shall not be
granted with respect to any claim that was adjudicated on the merits
in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme
Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court

precedent, within the first portion of 28 U.S.C. § 2254(d)(1), "if the state court

applies a rule that contradicts the governing law set forth in [the Supreme

Court's] cases." *Lockyer v. Andrade*, 538 U.S. 63, 73, 75 (2003) (quoting *Williams

v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694

(2002)). And a state court decision involves an unreasonable application of Supreme Court precedent, within the second portion of 28 U.S.C. § 2254(d)(1), "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413).

## III.    DISCUSSION

### A.    Insufficiency of the Evidence: Ground 1

In ground 1, Reeder alleges that there was insufficient evidence presented at trial to sustain his convictions in violation of his Fifth, Sixth, and Fourteenth Amendment rights. (ECF No. 16 at 5.)

#### 1.    State court determination

In affirming Reeder's judgment of conviction, the Nevada Court of Appeals held:

> The victims in this case, C.L. and A.R., became friends when they were six or seven years old. A.R. and C.L. often slept over at each other's houses. A.R.'s relative, Reeder, was often present in A.R.'s home. When C.L. was between six and eight years old, she and her family went to A.R.'s home. Reeder was present. That night, while A.R.'s and C.L.'s parents were gone, Reeder asked A.R. and C.L. to watch a movie with him in A.R.'s parents' room. A.R. and C.L. agreed. The three of them laid in A.R.'s parents' bed under the covers to watch the movie with Reeder in the middle. At some point, Reeder reached his hand under the covers and rubbed C.L.'s genitals over her clothes. He then put his hand under her clothes, continued to rub her genitals, and digitally penetrated her genitals. Reeder stopped when C.L. rolled over to her side. Reeder told C.L., "[i]f you don't enjoy it, we can stop." Later, C.L. turned back over because she was uncomfortable. C.L. was still awake, and Reeder again reached his hand under C.L.'s clothes and digitally penetrated her genitals.
>
> When A.R. was six or seven years old, Reeder entered her bedroom while she was alone and closed the door behind him. Reeder sat down next to A.R. on her bed and proceeded to rub her genitals over her clothing for two to four minutes. Neither A.R. nor Reeder spoke while Reeder was in her room.
>
> Neither C.L. nor A.R. told anyone about Reeder's sexual abuse until 2017, when C.L. revealed it to her mother. C.L.'s mother contacted police, who launched an investigation. As part of the investigation, C.L. met with Elizabeth Espinoza, a forensic interview specialist with the Department of Family Services, for an interview. C.L. told Espinoza that Reeder touched and penetrated her vagina twice when she was six or seven years old.
>
> The police contacted A.R. and her parents and Espinoza

interviewed A.R., but did not inform her of C.L.'s allegations. Espinoza asked A.R. whether she had ever been abused; A.R. stated that she had not. Following the interview, however, A.R.'s mother informed A.R. of C.L.'s allegations of sexual touching by Reeder. Espinoza interviewed A.R. a second time and this time, A.R. told Espinoza that Reeder rubbed her genitals over her clothing on two occasions.

Reeder was indicted for six offenses related to sexual abuse of A.R. and C.L. Counts 1 and 2 of the indictment alleged Reeder sexually assaulted C.L., a minor under 14 years of age. The remaining counts alleged that Reeder engaged in lewdness with A.R., a child under the age of 14.

A.R. and C.L. both testified at trial to the sexual touching by Reeder. Espinoza testified about her interviews with A.R. and C.L., corroborating A.R.'s and C.L.'s testimonies. Espinoza explained that, in general, she conducts her interviews from a neutral standpoint, taking care not to influence the child to give a particular answer. Espinoza further testified that child victims will often delay coming forward about sexual abuse, particularly when their abuser is a family member. Children also may not understand what happened to them until they are older, Espinoza explained, and they may believe they would not receive support if they did come forward.

The jury convicted Reeder of counts 1 and 2: sexual assault of C.L., a minor under 14 years of age, and counts 3 and 4: lewdness with A.R., a child under the age of 14, but acquitted on two other counts of lewdness with a child under the age of 14. This appealed followed.

Reeder raises a single issue on appeal: whether there was sufficient evidence to support his convictions. Reeder argues the passage of time between the alleged abuse and his trial casts serious doubt on A.R.'s and C.L.'s testimonies. Reeder further argues that A.R.'s mother influenced A.R. to retract her denial about being sexually abused when she told A.R. about C.L.'s allegations. Reeder also emphasizes that C.L. could not recount sensory details about the alleged assault. Reeder concludes that a rational trier of fact could not reasonably have found him guilty of counts 1 through 4 beyond a reasonable doubt due to these inconsistencies.

[FN3] We have considered Reeder's arguments that there were other purported inconsistencies in A.R.'s and C.L.'s testimonies and do not find them to be a basis for reversal.

The State answers that C.L.'s and A.R.'s testimonies are sufficient to support the guilty verdicts because the trier of fact may rely on victim testimony alone in sexual abuse cases. The State explains that credibility determinations are the province of the trier of fact, so Reeder cannot overcome the verdicts by impugning C.L.'s and A.R.'s testimonies on appeal. The State adds that Espinoza's testimony nevertheless refutes any argument that the victims are not credible.

In reviewing the sufficiency of the evidence, we must decide "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998). "[I]t is the jury's function, not that of the [reviewing] court, to

assess the weight of the evidence and determine the credibility of witnesses." *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992). A jury may rely on circumstantial evidence to reach its verdict. *Wilkins v. State*, 96 Nev. 367, 374, 609 P.2d 309, 313 (1980). A victim's testimony alone is sufficient to uphold a conviction in a sexual assault case. *Rose v. State,* 123 Nev. 194, 203, 163 P.3d 408, 414 (2007).

Sufficient evidence supports the jury's verdict on counts 1 and 2. NRS 200.366(1)(b) provides that "[a] person is guilty of sexual assault if he or she . . . [c]ommits a sexual penetration upon a child under the age of 14 years . . . ." A rational trier of fact could conclude beyond a reasonable doubt that Reeder sexually penetrated C.L. twice based on C.L.'s testimony that Reeder put his hands under her clothes and digitally penetrated her vagina. The trier of fact also reasonably could have concluded that C.L. was under 14 years of age at the time given her date of birth and testimony that she was between six and eight years old when the abuse occurred.

Reeder's argument that C.L.'s testimony was not sufficiently credible to prove he committed sexual assault beyond a reasonable doubt is unavailing. We will not reweigh evidence or witness credibility on appeal, so the inconsistencies Reeder highlights in C.L.'s testimony are immaterial insofar as *any* rational trier of fact could overlook them in favor of believing C.L.'s testimony beyond a reasonable doubt. *See Origel-Candido*, 114 Nev. at 381, 956 P.2d at 1380; *McNair*, 108 Nev. at 56, 825 P.2d at 573.

Sufficient evidence also supports the jury's verdict on counts 3 and 4. The version of NRS 201.230(1) that was in effect when Reeder was alleged to have committed counts 3 and 4 provides:

> A person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions of sexual desire of that person or of that child, is guilty of lewdness with a child.

*See* NRS 201.230(1). A.R. testified that Reeder twice performed lewd acts on her while she was under the age of 14. A rational trier of fact could conclude that Reeder was guilty of counts 3 and 4 beyond a reasonable doubt based on A.R.'s testimony alone. *See Rose*, 123 Nev. at 203, 163 P.3d at 414. Because we do not reweigh evidence or witness credibility, *see McNair*, 108 Nev. at 56, 825 P.2d at 573, Reeder's other arguments are not persuasive.

In conclusion, a rational trier of fact could believe A.R.'s and C.L.'s accounts of sexual abuse beyond a reasonable doubt, particularly in light of Espinoza's testimony. There is thus sufficient evidence to sustain the guilty verdict on counts 1 through 4.

(ECF No. 21-24 at 2–7.)

## 2.    Standard

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970); *see*

*also Coleman v. Johnson*, 566 U.S. 650, 655 (2012) ("[T]he minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law."). A federal habeas petitioner "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). On direct review of a sufficiency of the evidence claim, a state court must determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence is to be viewed "in the light most favorable to the prosecution," and it must be presumed "that the trier of fact resolved any . . . conflicts in favor of the prosecution." *Id.* at 319, 326. "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 4 (2011). In addition to deferring to the jury, this Court must also defer to the state court: federal habeas relief is available only if the state-court determination that the evidence was sufficient to support a conviction was an objectively unreasonable application of *Jackson. Coleman*, 566 U.S. at 651 ("*Jackson* claims . . . subject to two layers of judicial deference.").

Sufficiency of the evidence claims are judged by the elements defined by state law. *Jackson*, 443 U.S. at 324 n.16. Here, Nevada law defines sexual assault, as is relevant here, as "[c]ommit[ting] a sexual penetration upon a child under the age of 14 years." Nev. Rev. Stat. § 200.366(1)(b). "Sexual penetration" is defined as "cunnilingus, fellatio, or any intrusion, however slight, of any part of a person's body or any object manipulated or inserted by a person into the genital or anal openings of the body of another." Nev. Rev. Stat. § 200.364(9). And Nevada law defines lewdness with a child as "willfully and lewdly commit[ting] any lewd or lascivious act . . . upon or with the body . . . of a child . . . with the intent of arousing, appealing to, or gratifying the lust or passions or sexual

1   desires of that person or of that child." Nev. Rev. Stat. § 201.230(1).

2   **3.    Analysis**

3       The Nevada Court of Appeals reasonably determined that a rational trier of

4   fact could believe C.L.'s and A.R.'s accounts of sexual abuse beyond a reasonable

5   doubt. C.L. testified that Reeder inserted his fingers into her vagina on two

6   occasions, supporting the two sexual assault convictions. And A.R. testified that

7   Reeder rubbed her vagina on top of her clothes on two occasions, supporting the

8   two lewdness convictions.

9       Reeder argues that (1) A.R.'s reliability was lacking due to the fact that she

10  denied being sexually abused until after her mother tainted her by telling her that

11  C.L. had alleged that she was sexually assaulted, (2) C.L.'s testimony that she

12  waited many years to disclose Reeder's abuse due to being scared was

13  contradicted by her lack of mention of being scared in her interview with

14  Espinoza, (3) C.L. was unable to answer Espinoza's questions about sensory

15  details of the abuse, and (4) A.R. and C.L., who were approximately six years old

16  when the abuse occurred, did not make disclosures until they were twelve years

17  old. (ECF No. 16 at 7–14.) Although these arguments are certainly fodder for

18  closing argument at trial regarding the reliability of the evidence, they do not

19  demonstrate that the jury's findings of guilt were so unsupportable as to fall

20  below the threshold of rationality. Indeed, given that the jury has broad discretion

21  to decide what inferences to draw from the evidence, the Court presumes that the

22  jury accepted C.L.'s and A.R.'s testimonies as being reliable and rejected any

23  contention that A.R.'s testimony was unduly tainted by her mother, C.L.'s minor

24  contradictions and lack of memories were significant, and the passage of time

25  between the abuses and disclosures casted doubt on the victims' trustworthiness.

26  As such, Reeder fails to demonstrate that the Nevada Court of Appeals was

27  objectively unreasonable in concluding that the jury, acting as the factfinder,

28  rationally found the elements of sexual assault and lewdness beyond a

1    reasonable doubt.

2         Accordingly, the Nevada Court of Appeals' denial of relief on this claim

3    during Reeder's direct appeal proceedings was neither contrary to, nor an

4    unreasonable application of, clearly established federal law and was not based

5    on an unreasonable determination of the facts. Reeder is not entitled to federal

6    habeas relief for ground 1.

7         **B.    Ineffective Assistance of Counsel: Grounds 2, 3, and 4**

8         In grounds 2, 3, and 4, Reeder alleges that his right to effective assistance

9    of counsel under the Fifth, Sixth, and Fourteenth Amendments was violated.

10   (ECF No. 16 at 14.)

11        **1.    Procedural default**

12        Reeder previously acknowledged that grounds 2, 3, and 4 are unexhausted,

13   but he contended that they are technically exhausted and that he could

14   demonstrate cause and prejudice to overcome the procedural default pursuant

15   to *Martinez*. (ECF No. 34 at 6.) This Court found that Reeder had arguably met

16   three of the elements under *Martinez*: (1) he had no counsel during his initial-

17   review collateral proceeding, (2) his state post-conviction petition was the initial

18   proceeding regarding claims of ineffective assistance of trial counsel, and (3)

19   Nevada law requires that a claim of ineffective of assistance of trial counsel be

20   raised in a post-conviction habeas corpus proceeding. (*Id.* at 7–8.) However,

21   because the analysis of prejudice under *Martinez* to overcome the procedural

22   default of grounds 2, 3, and 4 is necessarily intertwined with the merits of these

23   grounds, the Court deferred a determination of the fourth element of *Martinez*:

24   whether grounds 2, 3, and 4 are substantial. (*Id.* at 8.) On this issue, this Court's

25   review is de novo. *See Ramirez v. Ryan*, 937 F.3d 1230, 1243 (9th Cir. 2019).

26        **2.    Standard**

27        In *Strickland v. Washington*, the Supreme Court established a two-prong

28   test for analysis of claims of ineffective assistance of counsel requiring the

petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

### 3.  Consideration of new evidence

Reeder bases his arguments in grounds 2 and 3 on declarations from his mother, Stephanie Reeder (hereinafter "Stephanie"); his sister, Denise Reeder (hereinafter "Denise"); his sister, Kimberly Hartnett; his sister, Deborah Sotiros; his previous girlfriend, Alicia Johnson; and Johnson's minor child, E.J. (ECF No. 16 at 15–18.) And Reeder bases his argument in ground 4 on his own declaration. (*Id.* at 19.) Respondents argue that this Court is prevented from considering this new evidence because it was developed after the conclusion of Reeder's state court proceedings. (ECF No. 35 at 15, 20.) Reeder does not dispute that these declarations were developed during his federal proceedings; indeed, Stephanie's declaration was executed in November 2023, Denise's declaration was executed in December 2023, and the remaining declarations were executed in March 2024. (*See* ECF Nos. 9-1 at 4; 17-1 at 2; 17-5 at 3; 17-4 at 2; 17-2 at 2; 17-3 at 3; 17-6 at 2.)

28 U.S.C. § 2254(e)(2) provides as follows:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

(A)    the claim relies on--

    (i)    a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

    (ii)    a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B)    the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

In *Shinn v. Ramirez*, the Supreme Court of the United States reinforced that when reviewing a federal habeas petition, the federal court may not consider any facts beyond the factual record presented to the state post-conviction relief court, unless one of the exceptions of § 2254(e)(2) applies. 596 U.S. 366, 382 (2022). The *Ramirez* Court also held that, with respect to procedurally defaulted claims not adjudicated on their merits in state court, the federal habeas court may not hold an evidentiary hearing or otherwise consider new evidence, either regarding the question of cause and prejudice relative to a procedural default or regarding the merits of the claim, unless the requirements of § 2254(e)(2) are met. *Id.* at 382–91.

Reeder does not argue that he can meet the requirements of § 2254(e)(2). Rather, he argues that he does not need to meet these requirements because, under § 2254(e)(2), he did not "fail[ ] to develop the factual basis of [these] claim[s] in State court." In support of this argument, Reeder explains that he sought— and was denied—the appointment of counsel and an evidentiary hearing in state court. (ECF No. 38 at 8–11.)

§ 2254(e)(2) applies when "there is lack of diligence . . . attributable to the prisoner." *Williams*, 529 U.S. at 432. A finding of diligence "depends upon

whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Id.* at 435. A prisoner "is not at fault" for purposes of § 2254(e)(2) "when his diligent efforts to perform an act are thwarted . . . by the conduct of another or by happenstance." *Id.* at 432. When "[a]n indigent prisoner . . . is denied counsel and discovery[, he] has no practical likelihood of" investigating his post-conviction claims in state court. *Rodney v. Garrett*, 116 F.4th 947, 957 (9th Cir. 2024). In this situation, a petitioner has done "all that he could to develop the evidentiary bases of his . . . claims in state court," so he cannot be found to have "fail[ed] to develop the state-court record within the meaning of § 2254(e)(2)." *Id.*

Here, Reeder requested that the state court appoint him post-conviction counsel and provide an evidentiary hearing. (ECF Nos. 21-26, 21-30.) The state court found that Reeder "ha[d] not demonstrated that counsel should be appointed," so it denied Reeder's request for counsel. (ECF No. 21-49 at 19–20.) The state court also denied Reeder's request for an evidentiary hearing, finding that Reeder "fail[ed] to set forth any reasoning to support expanding the record." (*Id.* at 21.) As such, because Reeder diligently pursued development of the state-court record in this matter but was thwarted by the state court from doing so, this Court finds that § 2254(e)(2) does not apply, so this Court is permitted to consider Reeder's new evidence.

### 4.    Ground 2

In ground 2, Reeder alleges that his trial counsel failed to call defense witnesses at sentencing and failed to explain there was insufficient evidence presented at trial. (ECF No. 16 at 14.)

### 1.    Background information

At Reeder's sentencing hearing, the prosecution argued, in part, that Reeder "is an individual who has been convicted four times of abusing children," the two children in this case—A.R. and C.L.—and two other children in the past.

(ECF No. 20-49 at 9–10.) The prosecution elaborated: "He's molested his own daughter. He's molested his own niece. He's molested strangers. He is the true definition of a child predator." (*Id.*)

The trial court indicated that it was "going to run the lewdness[ convictions] concurrent," so the question it was trying to answer was whether the assaults would be run concurrently or consecutively. (*Id.* at 11.) During his turn to speak, Reeder's trial counsel asked the trial court not to run the assaults consecutively, arguing as follows: "I hope that as a society we eventually get away from this idea of punishment. . . . Whether or not [Reeder] actually live[s] to be 85 [years old[4]] is not for me or anybody else to even guess." (*Id.* at 10–11.) Following the victims' impact statements, the trial court decided to run the assault convictions consecutively, explaining that its decision was "[b]ased upon the prior criminal convictions that the Defendant sustained and the nature similar to the ones to which he has now been adjudicated and the fact that two victims were engaged or involved in this case." (*Id.* at 20.)

Reeder now argues that his trial counsel should have called his mother, three sisters, prior girlfriend, and prior girlfriend's minor child to testify at his sentencing hearing. According to Reeder, these unpresented witnesses would have testified in accordance with their filed declarations.

First, Stephanie, Reeder's mother, would have testified that (1) Reeder was never left alone with children, (2) between the alleged assaults and her accusations, A.R. never acted "distressed or fearful when she was around" Reeder, (3) Jody "might have had a crush on" Reeder and made the accusations against Reeder after Jody found out that Reeder and Johnson were dating, and (4) she believed C.L. "was a liar and sneaky." (ECF No. 9-1.)

---

[4] Reeder was 50 years old at the time of sentencing, and because a category A felony carried a minimum sentence of 35 years, Reeder would be eligible for parole at the age of 85 assuming all four convictions were run concurrently.

Second, Denise, Reeder's sister, would have testified that (1) she was never "concerned about any inappropriate behavior" on Reeder's part in the 1990s when she lived with him, (2) on the day C.L. was allegedly abused, she "never saw [Reeder] inappropriately playing with and hanging out with children," (3) Jody flirted with Reeder, and she believed "Jody Reeder became jealous and upset when she learned [Reeder] was dating Alicia Johnson, who was Jody's friend and neighbor," (4) she "believe[s] Jody is capable of convincing others to lie," and (5) she "would trust [Reeder] around her son." (ECF No. 17-1.)

Third, Hartnett, Reeder's sister, would have testified that (1) Jody and her husband "drank and did drugs" with their friends, (2) Jody told her that she "married the wrong brother," (3) Jody told her that Lynch, C.L.'s mom, threatened Jody if she "didn't back her story," and (4) Lynch "was an unsavory character." (ECF No. 17-5.)

Fourth, Sotiros, Reeder's sister, would have testified that (1) Reeder's trial counsel told her that "it seemed as if [some of the jurors] were pressured to find [Reeder] guilty," and (2) Reeder's trial counsel told her that one juror told the other jurors something "to the effect of 'this isn't his first time,' meaning the juror knew [Reeder] had other convictions for similar crimes." (ECF No. 17-4.)

And finally, Johnson, Reeder's prior girlfriend, would have testified that she dated Reeder in 2017. (ECF No. 17-2.) E.J., one of Johnson's children, would then have testified that (1) she was friends with A.R., (2) she was never left alone with Reeder while spending the night, attending a pool party, or hanging out with A.R. at her house, (3) A.R.'s "home life was not healthy," (4) she "always felt comfortable and safe to be with [Reeder]," (5) she never "experience[d] any type of inappropriate behavior on behalf of [Reeder]" during the 9 months Reeder dated her mother, (6) A.R. asked if Reeder had done anything to her, and after she said no, A.R. ended their friendship "since [they] wouldn't go along with her words," (7) she was "immediately outcasted from [A.R.'s] group of friends . . . when [she]

expressed support for [Reeder]," and (8) A.R. was a controlling friend. (ECF No. 17-3.)

### 2.    Trial counsel's sentencing presentation duties

"[C]ounsel must conduct sufficient investigation and engage in sufficient preparation to be able to 'present[ ] and explain[ ] the significance of all the available [mitigating] evidence'" during the sentencing phase of a trial. *Mayfield v. Woodford*, 270 F.3d 915, 927 (9th Cir. 2001) (en banc) (alternations in original) (quoting *Williams*, 529 U.S. at 393). Because the sentencing court has wide "latitude to consider amorphous human factors," "[i]t is imperative that all relevant mitigating information be unearthed for consideration." *Bemore v. Chappell*, 788 F.3d 1151, 1171 (9th Cir. 2015) (quoting *Wharton v. Chappell*, 765 F.3d 953, 970 (9th Cir. 2014)) (internal quotation marks omitted). "To that end, trial counsel must inquire into a defendant's social background, family abuse, mental impairment, physical health history, and substance abuse history; obtain and examine mental and physical health records, school records, and criminal records; consult with appropriate medical experts; and pursue relevant leads." *Id.* (internal quotation marks omitted).

### 3.    Analysis

Even scrutinizing Reeder's counsel's performance under a highly deferential lens, it is readily apparent that Reeder's counsel—in addition to failing to present *any* mitigating evidence—gave a vague, lifeless, and unconvincing argument at the sentencing hearing. However, even if this Court were to find that Reeder's counsel's representation fell below an objective standard of reasonableness, the Court finds that Reeder fails to demonstrate prejudice.

First, because the same judge presided over Reeder's trial and his sentencing, the court understood that Reeder's convictions were based entirely on the testimonies of the victims. Thus, pointing out that "[t]here was no physical evidence presented at trial," as Reeder alleges should have been argued at his

sentencing hearing (*see* ECF No. 16 at 14), was unnecessary. Second, the testimonies of his mom, sisters, and prior girlfriend's minor child may have presented relevant good-character evidence,[5] but it is mere speculation that this supplemental evidence would have persuaded the court from sentencing Reeder to consecutive sentences for his assault convictions. *See Djerf v. Ryan*, 931 F.3d 870, 881 (9th Cir. 2019) ("*Strickland* prejudice is not established by mere speculation."). Indeed, it appears that the court based its finding that consecutive sentences were warranted on the fact that Reeder had committed similar crimes in the past and the fact that there were two victims in this case. Reeder's apparent good character would not have infiltrated these concerns. Third, other than E.J., the remaining unpresented witnesses were all Reeder's family members, so their opinions on Reeder's character would not have carried much weight. Relatedly, these testimonies mainly disputed that Reeder was capable of the crimes, which was a question for the jury, rather than contextualizing the evidence for sentencing purposes. *See Allen v. Woodford*, 395 F.3d 979, 1006 (9th Cir. 2005) (stating that it is rare that habeas relief is granted "based solely upon humanizing, rather than explanatory, mitigating evidence in the face of extensive aggravating circumstances").

In sum, because Reeder fails to demonstrate prejudice under *Strickland* resulting from his trial counsel's sentencing presentation, ground 2 is not substantial, so Reeder fails to demonstrate prejudice to overcome the procedural default of ground 2. Ground 2 is dismissed.

### 5.    Ground 3

In ground 3, Reeder alleges that his trial counsel failed to call defense witnesses at trial. (ECF No. 16 at 16.) Specifically, Reeder argues that his trial counsel should have called his mother, two of his sisters, and E.J. to testify in

---

[5] Reeder's mom's, sisters', and prior girlfriend's minor child's testimonies contesting Reeder's guilt are discussed in ground 3.

accordance with their declarations, which were discussed in ground 2. (*Id.* at 16–18.)

Given the lack of a post-conviction evidentiary hearing by the state court, it is unclear if Reeder's trial counsel had justification for choosing not to develop the testimonies of Stephanie, Denise, Hartnett, and E.J. and use them at the trial. However, this Court must "strongly presume[ ]" that Reeder's trial counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690; *see also Richter*, 562 U.S. at 105 ("Even under *de novo* review, the standard for judging counsel's representation is a most deferential one."). In fact, "[f]ew decisions a lawyer makes draw so heavily on professional judgment as whether or not to proffer a witness at trial." *Lord v. Wood*, 184 F.3d 1083, 1095 (1999).

Nonetheless, regardless of Reeder's trial counsel's alleged deficiencies in this regard, Reeder fails to demonstrate that these witnesses' testimonies would have raised a reasonable doubt in the minds of the jurors as to his guilt. Stephanie, Denise, Hartnett, and E.J. could have testified as to the unlikelihood of Reeder having been left alone with C.L. and A.R., the possibility of Jody having a motive to fabricate allegations against Reeder, and their opinions as to Reeder's general disposition towards children. However, this circumstantial testimony fails to rise to the level of undermining the prosecution's case or undermining confidence in the jury's verdict. C.L. and A.R. testified as to the abuse they suffered at the hands of Reeder, and while Reeder's declarations by his mom, sisters, and E.J.—if believed by the jury—may have cast doubt on C.L. and A.R.'s testimonies, the declarations would not have definitively disproven the victims' testimonies. Indeed, a petitioner's attempt to discredit victims and other witnesses with suppositions rather than direct evidence must fail given that this Court is not able to reweigh credibility. *See, e.g., Rice v. Collins*, 546 U.S. 333, 341-42 (2006) ("Reasonable minds reviewing the record might disagree about . .

. credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination."). As such, it is mere speculation that this inconclusive and merely conjectural evidence would have changed the result of Reeder's trial.

Because Reeder fails to demonstrate prejudice under *Strickland* resulting from his trial counsel's presentation of witnesses at trial, ground 3 is not substantial. Thus, Reeder fails to demonstrate prejudice to overcome the procedural default of ground 3, so ground 3 is dismissed.

### 6.    Ground 4

In ground 4, Reeder alleges that his trial counsel failed to object to the nebulous dates alleged in the indictment, and failed to explain to him that the State did not have to prove the offenses happened on a specific date. (ECF No. 16 at 18.)

### 1.    Background information

In the indictment, Reeder was accused of (1) two counts of sexual assault of C.L. "on or between August 21, 2010 and August 20, 2013," (2) two counts of lewdness of A.R. "on or between January 1, 2010 and June 15, 2012," and (3) two counts of lewdness of A.R. "on or between June 16, 2016 and December 31, 2016." (ECF No. 20-4; *see also* ECF No. 20-36.)

In January of 2018, at Reeder's arraignment, the trial court indicated that Reeder and his trial counsel had been handed copies of the indictment. (ECF No. 20-8 at 4.) In response to the trial court's questions, Reeder stated that he was looking at a copy of the indictment, he understood the nature of the charges contained in the indictment, he had an opportunity to discuss the charges with his trial counsel, and he was pleading not guilty to the charges. (*Id.* at 4–5.)

In March of 2024, Reeder signed a declaration, stating (1) he "was offered a plea deal [prior to trial] that would have resulted in a sentence of 2-8 years," (2) he "rejected the offer because [he] believed [he] could provide alibis for the dates

of the offenses [he] was being accused of," (3) he "did not understand that the State did not have to prove the alleged offenses occurred on a specific date," (4) if he had known that the State did not have to prove that the alleged offenses occurred on a specific date, he "would have accepted the plea deal, as it is impossible to provide an alibi for every day within a years long period," and (5) his "attorney never explained to [him] that the State did not have to prove the offenses happened on a specific date." (ECF No. 17-6 at 2.)

### 2.    Analysis

Turning first to Reeder's contention that his trial counsel failed to object to the nebulous dates alleged in the indictment, the Nevada Supreme Court has held that "there is no requirement that the State allege exact dates unless the situation is one in which time is an element of the crime charged. Instead, the State may provide approximate dates on which it is believed that the crime occurred." *Wilson v. State*, 114 P.3d 285, 301 (Nev. 2005). Further, "it is permissible for the State to give a time frame for an offense instead of a specific date, provided that the dates listed are sufficient to place the defendant on notice of the charges." *Id.*; *see also Cunningham v. State*, 683 P.2d 500, 502 (Nev. 1984) (explaining the policy behind this rule: "Generally speaking, in a case involving a child victim, the child is often unable to indicate to the state with any precision the exact time of the commission of the offense. This problem is compounded in cases involving sexual abuse, since there are usually no witnesses to the offense other than the child."). Because time is not an element of sexual assault or lewdness, the time periods in Reeder's indictment were proper under Nevada law. Therefore, there was no basis for Reeder's trial counsel to have sought dismissal of the indictment.

Turning next to Reeder's contention that his trial counsel failed to explain to him that the State did not have to prove the offenses happened on a specific date, this contention is based entirely on Reeder's own self-serving declaration.

*See, e.g., Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting a petitioner's claim, in part, because "[o]ther than [the petitioner]'s own self-serving statement, there [was] no evidence" to support his allegations); *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002) (explaining that the petitioner's "self-serving statement, made years later," was insufficient to support the petitioner's claim). Moreover, this contention is belied by the fact that the indictment listed a date range for the offenses, and Reeder told the trial court at his arraignment hearing that he had a copy of the indictment and had an opportunity to discuss the charges in the indictment with his trial counsel.

Accordingly, Reeder fails to demonstrate any deficiency by his trial counsel under *Strickland* regarding the date ranges in the indictment. As such, ground 4 is not substantial, so Reeder fails to demonstrate prejudice to overcome the procedural default of ground 4. Ground 4 is dismissed.

## IV. CERTIFICATE OF APPEALABILITY

This is a final order adverse to Reeder. Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a Certificate of Appealability. This Court has *sua sponte* evaluated the claims within the Second-Amended Petition for suitability for the issuance of a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002). Under 28 U.S.C. § 2253(c)(2), a Certificate of Appealability may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a Certificate of Appealability is appropriate only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct.

1    *Id.* Applying these standards, this Court finds that a Certificate of Appealability

2    is unwarranted.[6]

3    **V.    CONCLUSION**

4        It is therefore ordered that the Second-Amended Petition for Writ of Habeas

5    Corpus under 28 U.S.C. § 2254 [ECF No. 16] is denied.

6        It is further ordered that a Certificate of Appealability is denied.

7        It is further ordered that the Clerk of Court (1) substitute Nethanjah

8    Breitenbach for Respondent Timmothy Garrett, (2) enter judgment accordingly,

9    and (3) close this case.

10        DATED THIS 9th day of September, 2025.

11

12    _____

13    ANNE R. TRAUM
      UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

---

21    [6] Reeder generally request that the Court "[c]onduct an evidentiary hearing at
22    which proof may be offered concerning the allegations in" his Second-Amended
      Petition. (ECF No. 16 at 20.) The Court denies Reeder's request. First, Reeder
23    does not explain what evidence would be presented at an evidentiary hearing.
      Second, regarding ground 1, the Court has already determined that *de novo*
24    review is unwarranted, so supplementing the record for this ground is prohibited.
      *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (holding that "review under §
25    2254(d)(1) is limited to the record that was before the state court that adjudicated
      the claim on the merits"). And third, the Court has already determined that
26    Reeder is not entitled to relief and further factual development would not affect
      the Court's reasons for denying relief. *See Schriro v. Landrigan*, 550 U.S. 465, 474
27    (2007) ("[I]f the record . . . otherwise precludes habeas relief, a district court is
28    not required to hold an evidentiary hearing.").